ELIDA COMACHO GARCIA V. STATE OF TEXAS

NO. 07-99-0210-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JUNE 2, 2000

______________________________

ELIDA COMACHO GARCIA, 

Appellant

v.

THE STATE OF TEXAS, 

Appellee

______________________________

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY; 

NO. 96-422,197; HON. CECIL G. PURYEAR, PRESIDING 

______________________________

Before QUINN and REAVIS and JOHNSON, JJ.

Elida Comacho Garcia (appellant) was convicted by a jury of involuntary manslaughter.  Through four issues, appellant contends that her conviction should be reversed because 1) the results of her blood alcohol test should have been suppressed, 2) the state resorted to improper hypothetical questions during voir dire, 3) the evidence 

was factually insufficient to prove her intoxication caused the accident, and 4) her trial counsel was ineffective.  For reasons to be stated, we affirm.

Background

On July 23, 1993 at around midnight, Johnny Delatorre (Johnny) was attempting to cross Avenue Q in Lubbock, Texas with a shopping cart full of aluminum cans.  He had almost traversed the well-lighted, seven-lane street when appellant struck him with her car.  When the police arrived, appellant was observed by one officer exhibiting the signs of intoxication, i.e., the smell of alcohol on her breath, slurred speech, and a loss of balance.   The officer administered field sobriety tests which appellant generally failed.  He then placed appellant in his patrol car and advised her he would need a blood sample.  In speaking to other officers at the scene, the detaining officer told them he believed Johnny might die.  The officer then transported appellant to the hospital to obtain the blood sample.  Upon their arrival, the officer read a document to appellant advising her that she was under arrest for driving while intoxicated.  Upon hearing this, appellant refused to consent to the test.  Thereafter, the officer advised appellant that he would still obtain the sample without her consent.  Eventually, a sample was taken and tests showed appellant’s blood-alcohol content to be .25. Appellant was tried and convicted by a jury of involuntary manslaughter.  After her motion for new trial was overruled by operation of law, she timely appealed. 

Issue
 
One

In her first issue, appellant contends that the results of her blood test should have been suppressed because a blood sample was taken without her consent and while she was not under arrest.   We disagree and overrule the contention.

Statute permitted the officers to obtain a sample of 
appellant’s
 blood if, among other things, she was under arrest when the sampling occurred.  
Tex.Rev.Civ.Stat.Ann
. art. 6701l-5, 
§
 3 (i) (Supp.1991)
(footnote: 1).
  
The evidence at bar indicated that an officer had administered various field sobriety tests to appellant.  Upon her generally failing same, the officer suspected she was intoxicated and transported her to a local hospital so that her blood-alcohol content could be tested.  Prior to the blood being drawn, the officer read a document entitled “
Police Officer DWI Statutory Warning
”
 (referred to as 
“
DIC-24
"
) to appellant.  The DIC-24 began with the admonishment that 
“
[y]ou are under arrest for the offense of Driving While Intoxicated.
”
  After the warning was read, appellant refused to give the sample without her attorney being present.  In response, the officer advised appellant that her consent was not needed and that he would need to get a sample before she left the hospital.  This officer also testified that at no time was she free to leave until a specimen had been obtained.

Given that the standard of review is one of abused discretion, 
LaSalle v. State
, 923 S.W.2d 819, 823 (Tex.App. -- Amarillo 1996, pet. ref'd), we must read the evidence “in the light most favorable to the trial courts [sic] . . . ruling. . .”.  
Quinn v. State
, 958 S.W.2d 395, 401-402 (Tex. Crim. App. 1997).  In so reading the aforementioned evidence, we find it sufficient to support a trial 
court’s
 finding that a reasonable person would have believed 
appellant’s
 liberty was restrained.  Transporting appellant to the hospital, informing her by reading the DIC-24 form that she was under arrest, stating that her consent was unnecessary, and stating that a sample would be obtained before she left is some evidence that an arrest had occurred.  
See Nottingham v. State
, 908 S.W.2d 585, 588 (Tex. App.
--
Austin 1995, no pet.) (holding that the suspect was under arrest when the DIC-24 form stating as much was read to her).  That other evidence of record may have contradicted that conclusion matters not given the standard of review.  Again, we must construe the evidence in the light most favorable to the trial 
court’s
 decision.  And, if in doing so we uncover evidence supporting the decision, it must be affirmed.  

Issue
 
Two

Next, appellant argues that the trial court committed reversible error when it overruled her objection to a portion of the 
prosecutor’s
 voir dire.  According to appellant, the prosecutor was attempting to commit the jurors to a particular verdict if certain facts were established.   We disagree and reject the contention for several reasons.  First, the voir dire in question consisted of the prosecutor arguing:

Let’s
 say that 
we’re
 trying a murder case; all right.  And there’s two different courtrooms in the courthouse.  And in one courtroom, you have got a 25 year old gang banger; all right.  And it’s a gang-related shooting and the person he has killed is a rival gang member, and this guy is a gang member; the defendant is a gant member.  Okay.  And the victim is dead.  Okay?  That’s a murder case; all right?

 In another courtroom you have also got a 75 year old gentleman who has gone to the hospital and is tired of seeing his wife suffer. . .

To this, appellant objected as follows:

[the prosecutor] stands up and says, you know, you just have to imagine circumstances, and [he] then wants to give them specific circumstances or fact patterns to assist in making a determination of a maximum or a minimum punishment.  I don’t believe that’s proper, judge, to use specific facts.

From the exchange, one can see that the appellant complained of the State
’
s reference to “specific facts.”  Nothing was said about an effort by the State to commit the jurors to a particular verdict should certain facts be established.  Thus, the objection below does not comport with that uttered on appeal, which means the latter was waived.  Tex. R. App. P. 33.1 (a); 
Penry v. State
, 903 S.W.2d 715, 763 (Tex. Crim. App. 1995) (noting that the objection urged at trial must comport with the ground asserted on appeal).

Yet, assuming 
arguendo
 that waiver had not occurred, we remain convinced that the trial court did not err.  This is so because hypothetical fact situations can be used to explain applications of law as long as they do not constitute an inquiry into how a venireman would respond to a particular circumstance.  
Heiselbetz v. State
, 906 S.W.2d 500, 511 (Tex. Crim. App.  1995).  Here, the context of the 
prosecutor’s
 hypothetical illustrates that he was attempting to inform the prospective jurors that they had to be able to consider the entire range of punishment that could be levied.  
See
 
Fuller v. State, 
829 S.W.2d 191, 200 (Tex. Crim. App. 1992) (stating that jurors must be willing to consider the full range of punishment applicable to the offense to avoid a challenge for cause).  So too was he explaining to them the applicable range, which included probation and imprisonment.  Furthermore, the hypothetical used exemplified how that range could be applied depending upon the particular circumstances of a case.  The foregoing coupled with 1) the utter dissimilarity between the facts described in the hypothetical and those actually involved in the trial at bar and, 2) our recognition that the statement was declaratory, as opposed to interrogatory, leads us to conclude that the trial court did not abuse its discretion in overruling the objection.  
Anders v. State
, 973 S.W.2d 682, 686 (Tex. App.--Tyler 1997, pet. ref’d.) 
cert. denied
 525 U.S. 916, 119 S.Ct. 265, 142 L.Ed.2d 218 (1998)
 
(noting that the dissimilarity between the facts in the hypothetical and those of that actual trial is a factor to consider); 
Atkins v. State, 
951 S.W.2d 787, 790 (Tex. Crim. App. 1997) (applying the standard of abused discretion to decision involving voir dire).  In short, we are unable to say that the prosecutor was trying to have the veniremen commit to a particular verdict.

Issue Three

Next, appellant argues that the evidence was factually insufficient to prove that her intoxication caused the accident from which Johnny died.
(footnote: 2)  This is allegedly so because the State failed to show that but for 
appellant’s
 intoxication, the accident would not have occurred.  We disagree and overrule the contention.

Appellant was charged with involuntary manslaughter under 
section
 19.05 (a) (2) of the Texas Penal Code, as it existed at the time of the offense.  Therefore, to gain conviction, the State had to prove that appellant had by accident or mistake when operating a motor vehicle while intoxicated and, by reason of such intoxication, caused the death of an individual.  
Tex. Penal Code Ann
.
 § 
19.05(a) (2) (Vernon 1989).  Furthermore, causation is existent, under 
section
 6.04(a) of the same Code, when 
“
the result would not have occurred but for [
accused’s
] conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the [accused] clearly insufficient.
”
  In other words, if concurrent causes are present then two possible combinations exist to satisfy the “but for
” 
requirement.  The first involves proof that the 
defendant’s
 intoxicated state was sufficient by itself to have caused death, regardless of the existence of a concurrent cause and, the second, proof that the 
defendant’s
 conduct and the conduct of another when combined were enough to have caused the harm.  
Robbins v. State, 
717 S.W.2d 348, 351 (Tex. Crim. App. 1986).

At bar, the record contains evidence illustrating that immediately before being struck by appellant, Johnny was wearing a white shirt and was visible while crossing the street.  Indeed, other cars had slowed due to his presence on the roadway.  Yet, appellant testified that she did not see him.  Additionally, one expert opined that had she changed her course ever so slightly, the collision would not have occurred.  Yet, appellant attempted no evasive maneuvers to avoid Johnny, nor did she apply her brakes before hitting him.  Moreover, in returning to the immediate location of the accident, she almost struck Johnny again.

Next, testing indicated that 
appellant’s
 blood-alcohol level was at least .25 at the time of the incident.  That amount of alcohol in her system would have slowed her reaction time and impaired her depth perception, according to an expert.

In sum, evidence of 
appellant’s
 blood-alcohol level, impaired state, failure to see someone seen by other drivers, failure to take any evasive action, and near miss when returning to the scene (when compared to all other evidence of record) leads us to conclude that the verdict was not clearly wrong or unjust.  
Clewis v. State
, 922 S.W.2d 126 (Tex. Crim. App. 1996) (stating this to be the applicable standard when reviewing factual sufficiency complaints). Despite the fact that Johnny was crossing a major street at night outside a crosswalk, ample evidence nonetheless supports the determination that but for 
appellant’s
 intoxication, the collision and ensuing death would not have occurred.

Issue Four

Through 
appellant’s
 final issue, she argues that her trial counsel was ineffective because he failed to object to the jury charge and request an instruction on concurrent causation
(footnote: 3).
  
We disagree and overrule the contention for several reasons.

First, nothing of record indicates why trial counsel did not request the instruction.  Such evidence is necessary to rebut the presumption that his actions were reasonably sound trial strategy.  
Rodriguez v. State
, 955 S.W. 2d 171, 176-77 (Tex. App.--Amarillo 1997, no pet.); 
see Thompson v. State
, 9 S.W.3d 808 (Tex. Crim. App. 1999) (rejecting the claims of ineffectiveness because the record provided no explanation as to why counsel chose not to object).  Without it, appellant failed to carry her burden in proving that she received ineffective assistance of counsel.

Second, one could garner from the record that trial counsel sought to show that his client did not cause the accident but that Johnny’
s misconduct was the true cause.  In other words, it could be said that counsel was trying to convince the jury that his 
client’s
 intoxicated state in no way caused 
Johnny’s
 death.  If this were his tactic, then counsel may not have wanted to request an instruction on concurrent causation.  This is so because implicit in the instruction is the admission that 
appellant’s
 intoxicated actions could have been some cause, though not enough.  And, to concede that her intoxicated state 

may have been some cause would have contradicted his suggestion that it was no cause.  Thus, counsel may have been pursuing a legitimate trial tactic in foregoing the instruction. Having overruled each of 
appellant’s
 issues, we affirm the judgment.

Brian Quinn

    Justice

Do not publish.   

FOOTNOTES
1:
1
Article 6701I-5, section 3(i) has been re-codified in the Texas Transportation Code, section 724.012(b) effective September 1, 1995.

2:
2
Though appellant does not state that she is questioning the factual sufficiency of the evidence, she nonetheless cites the standard of review applicable to cases of factual insufficiency.  Thus, we construe the issue as involving the factual sufficiency of the evidence.

3:
3
In other words, counsel should have allegedly requested an instruction informing the jury that it could acquit his client if it found that Johnny’s conduct was clearly sufficient to cause the incident while appellant’s was clearly insufficient.